**VALUED SERVICES OF KENTUCKY, LLC; Angela Jackson; and Mary Depue, Appellants,**

v.

**Floyd WATKINS, Appellee.**

**No. 2008–CA–001204–MR.**

Court of Appeals of Kentucky.

June 19, 2009.

Discretionary Review Denied by Supreme Court May 12, 2010.

**258**

Sasha Y. Wagers, Lexington, KY, Mark R. Overstreet, Frankfort, KY, for appellants.

Debra Ann Doss, Lexington, KY, for appellee.

Before CAPERTON and STUMBO, Judges; BUCKINGHAM,[1] Senior Judge.

*OPINION*

BUCKINGHAM, Senior Judge.

This is an appeal from an order of the Fayette Circuit Court denying a motion to compel arbitration made by Valued Services of Kentucky, LLC, a check-cashing company, and two of its employees, Angela Jackson and Mary Depue (hereinafter collectively referred to as Valued Services), in a false imprisonment action filed by Floyd Watkins. The trial court denied the motion on the ground that the arbitration provision of Watkins's "payday loan" contract with Valued Services was unconscionable. For the reasons discussed below, we affirm.

On February 21, 2007, Floyd Watkins obtained a cash advance in the amount of $250 from Valued Services, which did business in Lexington under the name of Check Advance. As part of the loan transaction, Watkins signed a document entitled "Customer Agreement." Watkins had obtained loans from Valued Services on five previous occasions, and on each of those previous occasions, he had signed an identical "Customer Agreement." These customer agreements always included an identical arbitration provision.

Under the terms of the cash advance that Watkins obtained on February 21, he was required to repay the loan by March 15. Although he had always repaid the prior loans promptly, on this occasion Watkins claimed that he was unable to repay the loan on time. According to the allegations in Watkins's complaint, he telephoned Valued Services in mid-March and told them that he was out of state but would return in approximately one week, when he would repay the cash advance.

Upon his return to Lexington, Watkins went to the Check Advance store on Friday, March 23, and informed the store manager, Angela Jackson, that he could not repay his loan on that day, but that he would be able to do so three days later, on Monday, March 26. Jackson insisted that Watkins had to repay the entire amount that day and stated that he was not leaving the premises until he had paid in full. Jackson pushed a button to lock the office door and would not allow Watkins to leave even though he repeatedly asked to do so.

Jackson telephoned her regional manager, Mary Depue, and told her that "I have a black guy over here that refuses to pay his bill and he's not going to leave until he does." Watkins then spoke to Depue and told her that he had always repaid his loans on prior occasions, that he had to make his automobile loan payment that day, and that he would repay Check Ad-

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

vance in full on Monday, March 26. Depue then spoke to Jackson again. Jackson stated, "He's going to pay his bill or he's not leaving ... I want my money now!"

Watkins attempted to leave the office, but Jackson again refused to unlock the door, stating, "You ain't going nowhere until you pay me my money." Watkins again tried to leave, pushing on the office door. He told Jackson if she did not allow him to leave, he would call the police. In response, she shouted, "I don't care who you call, you are not going until you pay me my money." Watkins finally persuaded Jackson to allow him to use the office telephone to call a friend to bring the money to repay the loan. Watkins instead called 911 and asked for the police, telling the dispatcher that he was being held against his will at the Check Advance store.

Watkins was finally able to leave the office after the arrival of the police. He had been detained at the office for about one hour. Jackson told the investigating police officer that she had been instructed by Depue not to allow Watkins to leave the premises even if he called the police.

Watkins filed a complaint against Valued Services, Jackson, and Depue in the Fayette Circuit Court on March 20, 2008, alleging false imprisonment and seeking equitable and legal relief including declaratory and injunctive relief, attorney's fees, compensatory damages, costs, and punitive damages.

Valued Services moved the trial court for an order compelling arbitration (and staying litigation pending the outcome of arbitration) arguing that the Customer Agreement governing the loan transaction between Watkins and Valued Services subjected his claims to mandatory arbitration, specifically a subsection of the agreement that required arbitration of "all common law claims, based upon contract, tort,

fraud, or other intentional torts." Following briefing and oral argument, the trial court denied the motion, holding that the arbitration provision requiring Watkins to arbitrate claims that did not arise from the underlying loan transaction was unconscionable. Valued Services filed this appeal, arguing that the arbitration provision was neither procedurally nor substantively unconscionable and that the trial court erred as a matter of law in refusing to compel arbitration.

The arbitration provision is set forth on the second page of the two-page Customer Agreement signed by Watkins. The customer's signature is affixed to the first page of the agreement, directly beneath the following statement in bold typeface:

> **Please note that this Agreement contains a binding arbitration provision.** By signing this Agreement you acknowledge that it was filled in before you did so and that you have received a completed copy of it.... **You further acknowledge that you have read, understand, and agree to all of the terms on both pages of this Agreement, including the provision entitled "Waiver of Jury Trial and Arbitration Provision", which is located on the second page of this Agreement and is marked Page 2 of 2.**

Page 2 contains a full page of text in fine print. After supplying a definition of arbitration, it sets forth the following arbitration provision. The only claims that it exempts from arbitration are those brought in small claims court.

**THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning and

include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Customer Agreement (including the Arbitration Provision), the information you gave us before entering into this Customer Agreement, including the Customer Application, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this Arbitration Provision:

(a) **YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST U.S. OR RELATED THIRD PARTIES;**

(b) **YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST U.S. OR RELATED THIRD PARTIES; and**

(c) **YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST U.S. AND/OR RELATED THIRD PARTIES.**

. . . .

6. All parties, including related third parties, shall retain the right to seek adjudication in the Kentucky state Small Claims Court and District Courts for disputes within the scope of such courts' jurisdiction. All disputes asserted in a Kentucky state Circuit Court *shall* be resolved by binding arbitration. Any dispute, which cannot be adjudicated within the jurisdiction of a Kentucky Small Claims Court or District Court, as the case may be, shall be resolved by binding arbitration. Any appeal of a judgment from a Kentucky state District court *shall* be resolved by binding arbitration.

. . . .

8. **This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns.**

The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

As a general rule, "Kentucky law favors arbitration agreements." *Mortgage Electronic Registration Systems, Inc. v. Abner,* 260 S.W.3d 351, 353 (Ky.App.2008). KRS 417.050 provides in pertinent part that "[a] written agreement to submit any existing controversy to arbitration or a provision in written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable[.]" Valued Services argues that the express language of the statute, referring to "any controversy," mandates the enforcement of precisely the type of broad, all-encompassing arbitration agreement at issue here. But the statute also contains a savings clause that permits a party to avoid an arbitration agreement "upon such grounds as exist at law for the revocation of any contract." "In other words, the court—not an arbitrator—must decide whether the parties have agreed to arbitrate based on fundamental principles governing contract law." *Abner,* 260 S.W.3d at 353.

It is a fundamental rule of contract law that, "absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Conseco Finance Servicing Corp. v. Wilder,* 47 S.W.3d 335, 341 (Ky. App.2001) (citing *Cline v. Allis–Chalmers Corp.,* 690 S.W.2d 764 (Ky.App.1985)). A narrow exception to this rule is the doctrine of unconscionability, which

is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and **unfairly surprising** contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.

An unconscionable contract has been characterized as one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other. Unconscionability determinations being inherently fact-sensitive, courts must address such claims on a case-by-case basis.

*Id.* at 341–42 (citations and quotation marks omitted) (emphasis supplied).

In its order denying the motion to compel, the trial court held that

the averments of Plaintiff's Complaint concern issues completely outside the scope of the contract in question, and it would be unfairly surprising to compel binding arbitration of these issues. These issues do not relate to the underlying contract and could not reasonably have been contemplated by the parties as subject to arbitration. By analogy, the Court believes that ordering compulsory arbitration of the issues raised herein would be akin to ordering compulsory arbitration had Defendants sent 2 men to Plaintiff's house to break his legs because he was behind in his payments.

Although the trial court did not employ these terms, Valued Services has challenged its finding of unconscionability under two categories: procedural unconscionability and substantive unconsciona-

bility. Procedural or "unfair surprise" unconscionability "pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. . . ." *Id.* at 342–43, n. 22. In *Conseco,* this Court determined that an arbitration clause was not procedurally unconscionable on the following grounds:

> The clause was not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it, at least in its general import; and its effect is not such as to alter the principal bargain in an extreme or surprising way.

*Id.* at 343.

Valued Services maintains that the same conditions prevailed in this case: that the arbitration provision was boldly displayed and its existence twice emphasized elsewhere in the contract document; that the terms of the provision were plainly and thoroughly explained, using everyday language capable of being understood by persons of ordinary education and experience; that the waiver of the right to a jury trial was emphasized in a bold font and capital letters; that Watkins was given every opportunity to read the provision; and that the provision did not alter the principal bargain—the loan transaction—between Valued Services and Watkins in an extreme or surprising fashion.

What is not clear, however, is whether a person of ordinary education and experience would understand that his waiver of a jury trial extended far beyond disputes relating to the payday loan to encompass every imaginable unrelated claim that might arise between him (and his heirs, successors, and assigns) and Valued Services and its "employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated

entities." Would an individual like Watkins, when he obtained a loan advance for the relatively small sum of $250, understand that in so doing he had permanently waived his right to ever bring a civil action against the company and its employees for the commission of an intentional tort?

■ "It is difficult to fathom that one would knowingly compromise her right to sue for intentional tort claims." *Solis v. Evins,* 951 S.W.2d 44, 51 (Tex.App.1997). The Supreme Court of South Carolina has stated that

> [b]ecause even the most broadly-worded arbitration agreements still have limits founded in general principles of contract law, this Court will refuse to interpret any arbitration agreement as applying to outrageous torts that are unforeseeable to a reasonable consumer in the context of normal business dealings.

*Aiken v. World Finance Corp. of South Carolina,* 373 S.C. 144, 644 S.E.2d 705, 709 (2007) (footnote omitted). Although such a rule of interpretation does not exist in Kentucky law, it is particularly applicable in this case. "As with any contractual matter our main concern in deciding the scope of arbitration agreements is to faithfully reflect [ ] the reasonable expectations of those who commit themselves to be bound by [them]." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 28 (2nd Cir.1995) (citation and quotations marks omitted).

Moreover, a broad waiver of the type at issue here is particularly suspect when it is contained in a contract of adhesion. In *Conseco,* this Court gave as an example of procedural unconscionability

> "material, risk-shifting" contractual terms which are not typically expected by the party who is being asked to "assent" to them and often appear [ ] in the boilerplate of a printed form. The no-

tion of procedural unconscionability thus includes many of the concerns raised by contracts of adhesion.

*Conseco,* 47 S.W.3d at 343 n. 22 (citations omitted).

"[T]here is a significant difference between an adhesion contract in which the parties have disparate bargaining power and a contract which voluntarily has been entered into by sophisticated and knowledgeable businessmen concerning a financial transaction of considerable magnitude." *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.,* 983 S.W.2d 501, 504 (Ky.1998). The arbitration agreement in this case is undeniably a contract of adhesion made between parties with disparate bargaining power, and the waiver of the right to pursue a civil action in circuit court is certainly a material contractual term, which is stated in fine print within the boilerplate of the printed form. Recently, in finding an arbitration clause in a mortgage contract to be unconscionable, this Court quoted with approval a West Virginia court which "while noting that a bargain is not unconscionable merely because the parties to it are unequal in bargaining position, held that an arbitration clause that contains a 'substantial waiver of a parties' rights' is unenforceable.'" *Abner,* 260 S.W.3d at 354 (citing *Arnold v. United Companies Lending Corp.,* 204 W.Va. 229, 511 S.E.2d 854, 861–862 (1998)).

Valued Services also contends that the arbitration provision is not substantively unconscionable. Substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Conseco,* 47 S.W.3d at 343, n. 22 (citation omitted). Valued Services argues that the arbitration provision is not substantively unconscionable because it is equally binding on both parties,

obligates Valued Services to advance the customer's portion of the arbitration fees, which the customer is not obliged to reimburse, and does not limit the remedies available to the customer. Valued Services reiterates that the wording of KRS 417.050 recognizes that parties to a contract may agree to submit "any controversy" between them to arbitration, not exclusively controversies relating to the underlying contract. It also cautions that if we should affirm the order of the trial court, we would improperly create public policy by deciding that an agreement that does no more than what the General Assembly expressly condones is unconscionable.

■ As we have already stated, however, unconscionability is a well-established doctrine of contract law in Kentucky, and it is well within the province of the courts to find any contract, including one made pursuant to KRS 417.050, unconscionable. This point was made very effectively in an opinion of the U.S. Court of Appeals for the Seventh Circuit in regard to the relationship between the Federal Arbitration Act and contract law:

> Nothing in the Federal Arbitration Act overrides normal rules of contractual interpretation; the Act's goal was to put arbitration on a par with other contracts and eliminate any vestige of old rules disfavoring arbitration. Arbitration depends on agreement, *see First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), and nothing beats normal rules of contract law to determine what the parties' agreement entails. There is no denying that many decisions proclaim that federal policy favors arbitration, but this differs from saying that courts read contracts to foist arbitration on parties

who have not genuinely agreed to that device.

*Stone v. Doerge,* 328 F.3d 343, 345 (7th Cir.2003).

Case law from other states is replete with examples of courts upholding the principle that "even the broadest arbitration clauses obviously cannot cover every type of dispute that might arise." *RN Solution, Inc. v. Catholic Healthcare West,* 165 Cal.App.4th 1511, 81 Cal.Rptr.3d 892, 902 (2008).

> To hold otherwise would allow persons signing broad arbitration provisions to commit intentional torts against one another, which torts are outside the scope of their contemplated dealings, without concern that they might have to answer for their actions before a jury of their peers.

*Fountain Finance, Inc. v. Hines,* 788 So.2d 155, 158 (Ala.2000) (citation omitted). *See also Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1516 (10th Cir. 1995) ("if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract.")

There is no case law in Kentucky that addresses the type of broad arbitration provision at issue here. But an almost identical arbitration agreement, made pursuant to a payday loan, was the subject of an opinion by the U.S. Court of Appeals for the Seventh Circuit. *See Smith v. Steinkamp,* 318 F.3d 775 (7th Cir.2003). In that case, a payday loan borrower, Smith, signed an agreement containing an arbitration provision very similar to the one in this case. Smith took out another loan some time later, but she did not sign the agreement on that occasion. The pay-

day lender, Instant Cash, argued that the terms of the arbitration provision in the earlier loan agreement also governed all future loans that were made to Smith.

In discussing the terms of the arbitration provision, the Court, in an opinion authored by Judge Richard Posner, held that the sections waiving the right to a jury trial had to be interpreted as relating in some way to the underlying loan agreement. The concerns expressed by Judge Posner mirror almost exactly those of the trial court in this case:

> If (b) through (f) [which correspond almost exactly to sections 1(b) through (f) in the Valued Services arbitration provision] are read as standing free from any loan agreement, absurd results ensue, for example that if Instant Cash murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash (a "common law" suit, thus encompassed by (c)), Instant Cash could insist that the wrongful death claim be submitted to arbitration. For that matter, if an employee of Instant Cash picked Smith's pocket when she came in to pay back the loan, and Smith sued the employee for conversion, he would be entitled to arbitration of her claim. It would make no difference that the conversion had occurred in Smith's home 20 years after her last transaction with Instant Cash.

> The defendants' lawyer blanched when confronted with such hypothetical cases at oral argument but was unable to suggest a limiting principle.

*Smith,* 318 F.3d at 777.

The *Smith* court accordingly held that the arbitration agreement signed by Smith when she took out the initial loan was inapplicable to subsequent or future loans. The Court did not therefore reach the

question of unconscionability, but it did comment as follows:

> A cynic might argue that, given the desperation of people who take out payday loans, these plaintiffs would have signed *anything*, so that relieving them from the duty to arbitrate gives them a windfall based on an oversight by Instant Cash. The defendants do not make this argument, however, perhaps fearing that it would invite a conclusion that payday loans are unconscionable and therefore unenforceable even in states that do not deem them usurious.

*Id.* at 778.

Finally, Valued Services argues that the trial court's decision is not supported by the case law on which it purports to rely. Valued Services notes that, of the three cases cited by the trial court (*Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky.App.2001), *Hill v. Hilliard*, 945 S.W.2d 948 (Ky.App.1996), and *Anthem Health Plans of Kentucky, Inc. v. Academy of Medicine of Cincinnati*, 2004 WL 2413666 (2003–CA–000752–MR; 2003–CA–000753–MR; 2003–CA–000754–MR) (Ky.App.2004)), none stand for the proposition that an arbitration provision that provides for arbitration of matters other than those arising directly from the underlying contract is unconscionable.

*Conseco* provides the fullest discussion in our case law of the doctrine of unconscionability as it relates specifically to arbitration agreements, and the trial court did not therefore err in relying on it. Simply because the *Conseco* court focused on different grounds for finding unconscionability than those raised here, and concluded that the agreement at issue was not unconscionable, does not mean that the opinion was irrelevant to the trial court's analysis in this case.

In *Hill* and in *Anthem*, the doctrine of unconscionability was never invoked. Both cases stand for the proposition that it is within the power of the courts to delineate the scope of an arbitration provision. In *Hill*, it was held that claims for sexual assault and battery, intentional infliction of emotion distress, and false imprisonment were not within the scope of an arbitration agreement which was confined to "[a]ny controversy . . . arising out of employment or termination of employment[.]" *Hill*, 945 S.W.2d at 950. In *Anthem*, this Court upheld the trial court's ruling that the antitrust claims of a group of physicians against an insurance company were not subject to arbitration because they fell outside the scope of the arbitration agreement, which applied to "any disputes arising out of or relating to the provider agreement or business relationship." It did so on the ground that the antitrust action could be maintained without reference to the provider agreement or the business relationship.

■ Valued Services argues that the *Anthem* court erred in looking beyond the language of the arbitration provision to the underlying contract. Valued Services further appears to contend that, if we affirm the trial court, we would in effect establish a rule that a claim, in order to be arbitrable, must always relate to the underlying contract. That is not our intention. Although there is no requirement under Kentucky law that claims must relate to the underlying transaction in order to be arbitrable, the nature of the underlying transaction may certainly be considered in assessing whether an arbitration agreement is unconscionable when applied to a particular set of facts. In this case, the arbitration provision is unconscionable because it encompasses an intentional tort with so little connection to the underlying agreement that it could not have been foreseen by Watkins when he signed that agreement.

For the foregoing reasons, the order of the Fayette Circuit Court denying the motion to compel arbitration is affirmed.

ALL CONCUR.