RENDERED: SEPTEMBER 22, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0293-DG

CURTIS GREEN AND CLAY GREEN, INC.                    APPELLANTS
D/B/A GREEN'S TOYOTA OF LEXINGTON
AND JOHN HICKS


                        ON REVIEW FROM COURT OF APPEALS
V.                              NO. 2020-CA-0781
                        POWELL CIRCUIT COURT NO. 19-CI-00246


PHILLIP FRAZIER                                          APPELLEE


**OPINION OF THE COURT BY JUSTICE VANMETER**

**REVERSING AND REMANDING**

Parties who enter enforceable arbitration agreements are required to submit their disputes to binding arbitration, subject to limited exceptions, under both federal and Kentucky statutes. In this case, Phillip Frazier signed or initialed three documents agreeing to arbitrate any dispute with Curtis Green and Clay Green, Inc. d/b/a Green's Toyota of Lexington,[1] with respect to the purchase of a 2018 Toyota Tundra pickup truck (the "Truck"). The issue we address in this case is whether the Court of Appeals erred in affirming the Powell Circuit Court's order denying Green's motion to compel arbitration. We

---

[1] Frazier also joined Green's Toyota's salesman, John Hicks, as a party defendant. Both defendants are collectively referred to herein as "Green's."

hold that the Court of Appeals did err. We therefore reverse its opinion and remand this matter to the trial court with directions to enter an order compelling arbitration.

## I.    Facts and Procedural Background.

In 2018, Frazier, a Powell County resident, purchased the Truck from Green's. Frazier alleges that his salesman, John Hicks, represented that the truck was a "new" vehicle with no prior damage.

The controversy giving rise to this case arose when Frazier, in September 2019, returned the Truck to Green's for routine maintenance. While there, Frazier became interested in another vehicle on the lot. When discussing a possible trade-in, Frazier learned that the CARFAX for the Truck indicated that it had been damaged prior to his purchase. Frazier alleged that Green's general manager informed him employees at Green's had wrecked the Truck on the lot prior to its original sale to Frazier and repaired the damage, but that Green's had failed to disclose this information to Frazier.

In December 2019, Frazier filed a civil complaint against Green's in Powell Circuit Court. Frazier alleged (1) Green's breached its contract with him by selling him a vehicle represented as "new" when in fact the vehicle was not in new condition as it had previously been wrecked; (2) Green's actions constitute a breach of express and implied warranties as it was warranted to Frazier that he was purchasing a new vehicle with no prior damage; (3) Green's Toyota engaged in unfair, false, misleading and/or deceptive acts or practices in violation of Kentucky's Consumer Protection Act, KRS 367.170; and (4)

2

Green's intentionally and fraudulently misrepresented that the Truck was a new vehicle. Frazier sought an award of compensatory and punitive damages.

Green's responded to the complaint by filing a motion to dismiss for lack of jurisdiction, improper venue, or in the alternative motion to dismiss to compel and/or direct arbitration. The motion to compel arbitration was based on provisions contained in three documents signed or initialed by Frazier when he purchased the Truck in June 2018. First, the Purchase Contract for the Truck included incorporation language above the signature lines, that "Purchaser has read and agreed to the terms on the reverse side hereof, including the <u>ARBITRATION AGREEMENT</u>, provided for in paragraph 17. . . ." The referenced paragraph stated, in full:

> 17.   Any claim or dispute by Purchaser with Dealer arising out of or in any way relating to this Contract, any installment sale contract for the Vehicle, and any other agreements related to or provided herein, the Vehicle, the negotiations and financing, and the sale by Dealer to Purchaser, of the Vehicle, including, without limitation, any claims involving fraud or misrepresentation, personal injuries, products liability, state or federal laws or regulations affecting or establishing the rights of consumers (without limitation truth in lending laws and regulations or consumer protection laws acts and regulations) shall be resolved by binding arbitration administered by Better Business Bureau Serving Eastern and Central Kentucky, Inc., in accordance with its rules. Dealer and/or its assignee and Purchaser shall execute and deliver all agreements reasonably necessary in connection with such arbitration. All arbitration proceedings shall be held in Lexington Fayette County, Kentucky. The decision of the arbitrator(s) shall be final, conclusive and binding on the parties to the arbitration and no party shall institute any suit with regard to any such claim or dispute, except to compel arbitration or to enforce the arbitration decision. Venue for any action to enforce this Arbitration Agreement or any arbitration decision shall be in Fayette County, Lexington, Kentucky. Provided however, Dealer and/or its assigns may

3

at its option bring or institute litigation in any state or federal court, against Purchaser and the Purchaser hereby consents to the jurisdiction of such courts and agrees to the entry of a judgment by any such court against Purchaser in favor of Dealer, seeking specific performance by Purchaser of Purchaser's obligations hereunder, for any violation or breach of the Purchaser's representations and warranties provided for in paragraphs 3, 10 and 11 hereof[2] and/or on any installment sale contract for the Vehicle between Dealer and/or its assignee and Purchaser.

The second document that appears in the limited record is entitled Green's Toyota of Lexington Applicable Contingency and Arbitration Agreement ("Financing Contingency Agreement"). Specifically, this document, in Section I, purported to make the purchase and sale of the Truck contingent upon Green's arranging financing for the transaction subject to Frazier's acceptance, as shown by Frazier's initials adjacent to the applicable contingency, with a number of additional terms and conditions related to the financing contingency. Section II provided the following:

II. Arbitration Agreement

Any claims or dispute arising out of or in any way relating to this Agreement, the negotiations, the financing, sale or lease of the vehicle which is the subject of the Agreement, including any claim involving fraud or misrepresentation, must be resolved by binding arbitration administered by the Better Business Bureau of Central and Eastern Kentucky, Inc , in accordance with its rules. All arbitration proceedings shall be held in Lexington, Kentucky. The decision of the arbitrator(s) will be final, conclusive and binding on the parties to the arbitration and no party shall institute any suit with regard to the claim or dispute except to enforce the award. Each party shall advance its pro rata share of the costs and expenses of said arbitration proceedings and each shall separately pay its own attorney's fees and expenses. No party to this Agreement

---

[2] Paragraphs 3, 10, and 11 addressed matters related to any vehicle that the Purchaser may have traded in.

4

shall have the right to recover in any proceeding nor shall the arbitrator(s) have the authority to award any party consequential or punitive damages.

The Financing Contingency Agreement appears to be subscribed by Green's but only initialed by Frazier.

Finally, the third document is in the form of a questionnaire related to twelve items involved in the transaction, *e.g.*, the identification of the vehicle; identification of any applicable trade-in; acknowledgement of receipt of the Purchase/Lease Agreement; acknowledgement of the monthly payment for a financed purchase; acknowledgement that the transaction could not be rescinded or voided. The final item was the following:

12.     Any claim or dispute arising out of or in any way relating to this contract, the negotiations [sic] financing, sale or lease of the vehicle which is the subject of this contract, including any claim involving fraud or misrepresentation, must be resolved by binding arbitration administered by the Better Business Bureau or [sic] Central or Eastern Kentucky Inc. in accordance with its rules. All arbitration proceedings shall be held in Lexington, Kentucky. The decision of the arbitrator(s) will be final [sic] conclusive and binding on the parties to the arbitration and no party shall institute any suit with regards to any claim or dispute except to enforce the arbitration decision. Venue for any action to enforce this arbitration decision shall be in Fayette County Court, Lexington, Kentucky.

In addition to the places in which Frazier initialed items numbers 2, 3, 4, 5 and 6, he also initialed the bottom of this document.

The trial court denied Green's motion(s). With respect to Green's venue argument, the trial court agreed with Frazier that his Consumer Protection claim was permitted to be brought in the county of his residence. KRS 367.220. As to the motion to compel arbitration, the trial court agreed with

5

Frazier that because the arbitration clause in the Financing Contingency Agreement precluded consequential or punitive damages, the arbitration agreement was unconscionable and unenforceable. *Mortg. Elec. Registration Sys., Inc. v. Abner*, 260 S.W.3d 351, 352 (Ky. App. 2008).

As permitted by KRS 417.220(1)(a), Green's filed an interlocutory appeal with the Court of Appeals as to the denial of the motion to compel arbitration. In a 2-1 decision, the Court of Appeals affirmed the trial court. The majority opinion agreed that the arbitration agreement was both procedurally and substantively unconscionable and was incapable of being severed from the remainder of the contract. The Court of Appeals dissent opined that the challenge to the terms of the arbitration agreement was within the purview of the arbitrator, and would have ordered arbitration. *Curtis Green and Clay Green, Inc. v. Frazier*, No. 2020-CA-781-MR, 2021 WL 2878360, at *8-*9 *Ky. App. July 9, 2021) (Maze, J., dissenting). Green's moved for discretionary review, which we granted.

## II.     Standard of Review.

Under KRS 417.220(1)(a), an appeal may be taken from an order denying an application to compel arbitration. The standard of review of a trial court's ruling on a motion to compel arbitration is a *de novo* determination of whether the trial judge erred when deciding a factual or legal issue. *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 833 (Ky. 2013); *see Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 590 (Ky. 2012). In *Ping*, we stated "a party seeking to compel arbitration has the initial burden of establishing the

6

existence of a valid agreement to arbitrate." *Id.* (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, (1995); *Louisville Peterbilt, Inc. v. Cox,* 132 S.W.3d 850, 857 (Ky. 2004)). Once prima facie evidence of the agreement has been presented, the heavy burden of avoiding the agreement shifts to the other party. *Louisville Peterbilt,* 132 S.W.3d at 857. Factual findings of the trial court are reviewed under the clearly erroneous standard and are deemed conclusive if supported by substantial evidence. *Energy Home,* 406 S.W.3d at 833 (citation and quotation omitted).[3]

### III.    Analysis.

The main issue before us is whether the parties' agreement evidences an agreement to arbitrate any disputes. In this regard, our decision in *Dixon v. Daymar Colleges Grp., LLC,* 483 S.W.3d 332 (Ky. 2015) is pertinent:

> Broadly speaking, validity challenges to arbitration provisions can be separated into two types: (1) challenging "specifically the validity of the agreement to arbitrate[ ]" *Rent–A–Center v. Jackson,* 561 U.S. 63, 71 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 (2006)); and (2) challenging "the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* (quoting *Buckeye,* 546 U.S. at 444). Per decades of Supreme Court precedent, "only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* at 69. The second class of challenge is within the purview of the arbitrator. Indeed, in *Buckeye Check Cashing, Inc.*

---

[3] In this case, the trial court entered a terse, two-plus-page order with minimal factual findings. From it, we learn that Frazier was a Powell County resident, and that the parties had an agreement to arbitrate which Green's sought to enforce, with a clause preventing a plaintiff from recovering consequential or punitive damages. From a legalistic perspective, we might be inclined to reverse and remand to the trial court for more complete and adequate factual findings, but the parties' pleadings supply the basic facts of the transaction which are not disputed.

*v. Cardegna*, the Supreme Court noted, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." 546 U.S. at 445–46.

*Daymar*, 483 S.W.3d at 340. The straightforward application of this holding, as aptly noted by Court of Appeals Judge Maze in his dissent in this matter, compels the conclusion that since the parties clearly agreed to arbitrate, the trial court erred in failing to enforce that agreement, leaving all other issues to an arbitrator's determination.

Frazier seeks to avoid the applicability of this holding by arguing the contract was unconscionable, both procedurally and substantively, to void the arbitration agreement. In *Schnuerle v. Insight Communications Co., L.P.*, 376 S.W.3d 561 (Ky. 2012), we discussed at length those aspects of unconscionability, both procedural and substantive, that might void a contract. Green's argues that the Court of Appeals misapplied *Schnuerle*, whereas Frazier argues the contrary.

As an initial matter, written contracts are generally enforceable against a party who had an opportunity to read it. *Id.* at 575 (quoting *Conseco Fin. Serving Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001)). Contractual terms which may appear on the reverse of a contract are similarly binding, so long as the incorporation language appears above the signature line. *Bartelt Aviation, Inc. v. Dry Lake Coal Co. Inc.*, 682 S.W.2d 796, 797 (Ky. App. 1985). In *Schnuerle*, we recognize that unconscionability is a recognized, albeit narrow, exception to this general rule of enforceability. 376 S.W.3d at 575 (stating "the doctrine . . . police[s] the excesses of certain parties who abuse

8

their right to contract freely.  It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain[]").

As to procedural unconscionability, or "unfair surprise," *id.* at 576, it "pertains to the process by which an agreement is reached and the form of an agreement," including fine print, convoluted or unclear language, boilerplate, terms which might not normally be expected.  *Id.* (citations omitted).  The following factors are relevant to consideration of procedural unconscionability: "the bargaining power of the parties, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice."  *Id.* (internal quotations and citations omitted).

Our review of the Purchase Contract, the document that Frazier and Green's both signed, is that it is subscribed at the bottom of the page by both parties.  Immediately above Frazier's signature is the provision that "Purchaser has read and agreed to the terms on the reverse side hereof, including the ARBITRATION AGREEMENT, provided for in paragraph 17. . . ."  Next, two short provisions address the Purchaser's responsibility for liability insurance, including a statement that Green's is not providing liability insurance.  And, the following provision follows, in all capital letters, highlighted by its appearing in white letters in a black box: "PURCHASER ACKNOWLEDGES HAVING READ AND UNDERSTOOD THE FRONT AND BACK SIDES OF THIS CONTRACT."  The first full sentence of paragraph 17, states:

9

17.   Any claim or dispute by Purchaser with Dealer arising out of or in any way relating to this Contract, any installment sale contract for the Vehicle, and any other agreements related to or provided herein, the Vehicle, the negotiations and financing, and the sale by Dealer to Purchaser, of the Vehicle, including, without limitation, any claims involving fraud or misrepresentation, personal injuries, products liability, state or federal laws or regulations affecting or establishing the rights of consumers (without limitation truth in lending laws and regulations or consumer protection laws acts and regulations) shall be resolved by binding arbitration administered by Better Business Bureau Serving Eastern and Central Kentucky, Inc., in accordance with its rules.

The balance of the paragraph addresses joint agreement to execute documents for the arbitration, arbitration location, finality of any award, and venue for enforcing an award.  Admittedly, the paragraph permits Green's to file a court action to enforce violations of any of Purchaser's representations or warranties as to a trade in or to collect on any installment contract.

Paragraph 17 was properly incorporated by reference into the terms of the Purchase Contract.  Far from being hidden, it was expressly identified on the front page with underlined capital letters with the paragraph number included.  The paragraph's terms are not confusing, easily understandable by persons of ordinary experience and education, and further do not limit damages available or statutory remedies.  It merely says any claim or dispute arising out of the Contract is to be submitted to binding arbitration.  We conclude that the Contract, including the arbitration provision, was not procedurally unconscionable.[4]

---

[4] In *Schnuerle*, Justices Schroder and Noble dissented in part as to the Court's holding that an arbitration agreement was not procedurally unconscionable based on the factor of "meaningful choice."  376 S.W.3d at 580 (Schroder, J., concurring in part

The Court of Appeals erred in its interpretation of this agreement by concluding that the arbitration agreement was inconsistent, impossible to read, and not conspicuous or clear, thereby resulting in unconscionability. The Court of Appeals also ignored the severability clause in the Purchase Contract. We similarly hold the Court of Appeals erred in concluding that inconsistencies among the various arbitration provisions created ambiguity requiring voiding of the arbitration agreement. This issue was addressed in *Louisville Peterbilt.* In that case, Cox, the plaintiff, generally alleged unconscionability based on inconsistencies in the various agreements, that the agreements were contracts of adhesion, and the transaction constituted a failure of the meetings of the minds. 132 S.W.3d at 856. We noted, however, that Cox did "not allege that the documents were inconsistent in that some require arbitration of claims and some do not, or that he was unaware that he was agreeing to submit his claims to arbitration. He simply argues that the documents cannot evidence a meeting of the minds." *Id.* Because Cox signed two separate agreements stating claims would be arbitrated and failed to allege fraudulent inducement

and dissenting in part). In their view, the defendant involved was the only provider of high-speed broadband cable internet service in Louisville at that time. In other words, the plaintiffs were presented with "no meaningful choice" resulting in an arbitration agreement which was procedurally unconscionable. *Id.* In this case, we are presented with a limited record and minimal factual findings, as noted. Perhaps, we would be justified to take judicial notice, KRE 201, that Green's is one of at least four Toyota dealerships in Central Kentucky, with the others being in Franklin, Jessamine and Madison Counties. As Frazier bears the heavy burden of proving the arbitration agreement was not enforceable, the record would thus not support a finding of "no meaningful choice."

11

to do so, we held that "all other alleged disputes are for an arbitrator." *Id.* That holding applies here as well.

Substantive unconscionability "'refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent.'" *Schnuerle*, 376 S.W.3d at 577 (quoting *Conseco*, 47 S.W.3d at 343 n.22 (citation omitted)). As for substantive unconscionability, courts consider "'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" 376 S.W.3d at 577 (quoting *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 876 (11th Cir. 2005)). Additionally, in *Grimes v. GHSW Enterprises, LLC*, 556 S.W.3d 576, 582-83 (Ky. 2018), we rejected, as a matter of law, any requirement that arbitration agreements must have mutuality of obligation, *e.g.*, both parties equally agree to arbitration, as a condition of enforceability. We held that as long as the requirement of consideration is met, no additional requirement of mutuality of obligation exists. *Id.* at 583.

We conclude that the arbitration provisions in the Purchase Contract are commercially reasonable. Kentucky public policy favors arbitration as a method of dispute resolution. *Schnuerle*, 376 S.W.3d at 574. As a general matter, arbitration can provide a relatively quick and inexpensive means of resolving disputes such as this one. As previously noted, however, the last sentence of Paragraph 17 in the Purchase Contract permits Green's and/or its assigns, but not Frazier, to file a court proceeding to enforce violations of any of

12

Purchaser's representations or warranties as to a trade in or to collect on any installment contract. The question is whether this is grossly or unreasonably favorable to one side, *i.e.,* Green's? We hold that it is not.

First of all, *Grimes* addressed any claim regarding "[a]n imbalance in the respective remedial rights available to the parties under an agreement[.]" 556 S.W.3d at 582. As long as the agreement is otherwise supported by valuable consideration, remedial imbalance does not invalidate the contract. *Id.* Here, Green's sold and Frazier purchased a 2018 Toyota Tundra pickup at approximately $49,000, unquestionably a valuable consideration.[5] Secondly, we noted that "[w]hether a contract provision is unconscionable is 'highly fact specific.'" *Id.* at 583 (quoting *Kegel v. Tillotson,* 297 S.W.3d 908, 913 (Ky. App. 2009)). In the context of this dispute, the trade-in language is simply inapplicable since Frazier did not trade in a vehicle. The provision for collection is likewise not problematic because it does not limit Frazier's ability to counterclaim in the event a lawsuit for collection were to be filed. The Purchase Contract is not substantively unconscionable, and the Court of Appeals erred in concluding otherwise.

Frazier next argues that *Valued Services of Kentucky, LLC v. Watkins,* 309 S.W.3d 256 (Ky. App. 2009), supports his argument that his claims under KRS 190.071 (Prohibited practices on part of new motor vehicle dealer) and Chapter 367 (Consumer Protection) are outside the scope of the arbitration

---

[5] We recognize, of course, that Frazier believes he did not receive his bargained-for exchange. Any remedy, however, is to be determined by the arbitrator(s).

13

agreement and are thereby not subject to arbitration. Again, we disagree. *Watkins* involved a broad arbitration agreement in a contract used by a check-cashing company. A dispute arose when Watkins, the borrower, was unable to repay the loan and he was held in an office against his will. Watkins' complaint was for false imprisonment. *Id.* at 258-59. Both the trial court and the Court of Appeals held that Watkins' claim, false imprisonment, an intentional tort, was *unrelated* to the transaction. The court's holding was that while

> no requirement [exists] under Kentucky law that claims must relate to the underlying transaction in order to be arbitrable, the nature of the underlying transaction may certainly be considered in assessing whether an arbitration agreement is unconscionable when applied to a particular set of facts. In this case, the arbitration provision is unconscionable because it encompasses an intentional tort with so little connection to the underlying agreement that it could not have been foreseen by Watkins when he signed that agreement.

*Id.* at 265. Those facts stand in contrast to the facts of this case in which all of Frazier's claims relate to his purchase of the Truck.[6]

We might, were we so inclined, write more on the various claims and issues presented, *e.g.*, limitation of damages, terms of the arbitration agreement, venue for enforcing any award (whether in favor of Frazier or Green's). Those issues, however, are more properly decided by the arbitrator.

---

[6] Likewise, we reject Frazier's claims against the arbitration agreement that it was procured by fraud, unsupported by adequate consideration, or against public policy. *See Louisville Peterbilt*, 132 S.W.3d at 856; *Grimes,* 556 S.W.3d at 582-83 (holding that as long as the contract is supported by consideration, an imbalance of remedial remedies does not invalidate the agreement).

14

## IV. Conclusion.

In conclusion, the Court of Appeals opinion is vacated, and this matter is remanded to the Powell Circuit Court with directions to enter an Order granting Green's motion to compel arbitration.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Carroll Morris Redford, III
Miller, Griffin & Marks PSC

COUNSEL FOR APPELLEE:

Teddy Lowell Flynt
Larry Dustin Riddle
Flynt Law Offices