**COWDEN MANUFACTURING CO., INC., Appellant,**

**v.**

**SYSTEMS EQUIPMENT LESSORS, INC., Appellee.**

Court of Appeals of Kentucky.

May 23, 1980.

Rehearing Denied July 18, 1980.

Discretionary Review Denied Dec. 9, 1980.

B. L. Kessinger, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, for appellant.

James R. Odell, Odell, Stith & Lemaster, Lexington, for appellee.

Before BREETZ, GUDGEL and HOWARD, JJ.

HOWARD, Judge.

This is an appeal from the Fayette Circuit Court from a judgment rendered in favor of the plaintiff/appellee in regards to a breach of contract suit. The issue before this Court is whether or not the findings of the trial court were supported by sufficient evidence. We find that there was sufficient evidence to support the judgment and, pursuant to Rule 52.01, we will therefore not disturb same.

The facts in this case are that the parties entered into a lease, executed February 5, 1973, for a computer. The computer involved was a Honeywell 2050. The appellant, hereinafter called Cowden, had entered into discussions with Honeywell, the manufacturer of the computer, prior to the involvement of the appellee in any of these transactions. The upshot of the discussions was that Honeywell placed the 2050 in the Cowden plant in Lexington, Kentucky, although Cowden was somewhat dubious as to whether or not this particular computer would perform or produce sufficient output for Cowden's needs. After the computer had been installed, discussions began between Cowden and the appellee as to the possibility of Cowden assigning its lease on

the 2050 to the appellee. The advantage to Cowden in making such assignment would be that the appellee would purchase the computer and then rent it to Cowden on terms that were more liberal than that afforded by the lease contract offered to Cowden by the manufacturer, Honeywell.

The appellee was in the business of financing computers and other expensive equipment for businesses and it found it a profitable business, of course, to enter into arrangements such as that offered to Cowden. One of the important reservations in the lease that was executed between Cowden and the appellee, was that the appellee made no warranty whatsoever as to the performance of the computer system and, according to the terms of the agreement, if the equipment did not operate according to representations made by Honeywell, then it was the obligation of Honeywell to set the matter straight with Cowden. It is clear from the evidence, and there is no dispute about this, that the appellee was merely a leasing agency and had nothing to do with the manufacturing or operation of the equipment.

Cowden received the lease from the appellee in February, 1973, and properly executed same and returned it to the appellee. Cowden did not return a Certificate of Delivery and Acceptance, hereinafter referred to as D & A, and Cowden points to this as the single most important fact that would indicate that there was no intention on the part of the parties to have a binding contract. The dispute that culminated in this lawsuit pretty much centers around whether or not this contention of Cowden is correct. The only function of the D & A was to indicate the receipt in operating condition of the equipment under the lease, which in turn served as a "trigger" in determining the starting date for the payment of the rent on the machine. The agents of the appellee testified that it was necessary to produce the D & A to its bank in order for it to arrange its financing for the purchase of the computer. The testimony of the agents of the appellee is clear that after receipt of the D & A, and after whatever arrangements were to be made with the bank, they would have executed the lease and returned same to Cowden. On the other hand, Cowden's position is that they withheld the D & A because they were not satisfied with the 2050 computer and were negotiating with Honeywell to lease or purchase a new computer, 2050A, which was larger and which they felt would be more appropriate for their business. The appellee was fully aware of these discussions and willingly withheld the enforcement of their lease in order that Cowden and Honeywell might settle the matter by the purchase of the larger computer in which the appellee hoped to participate in the same manner as with the 2050 computer. However, Cowden made a separate deal with Honeywell, over the protest of the appellee, and purchased or leased the 2050A computer, leaving the appellee out in the cold. Thereupon, the appellee filed this lawsuit, attempting to enforce its lease.

■ In an action such as this, where you have a written instrument involved, it would seem that the appropriate place to decide what the parties agreed to would be to look at the lease. Paragraph 3 of the lease notes that the delivery of the equipment shall be deemed complete upon its arrival, installation and acknowledgment that it is in good operating order. Specifically excluded are any warranties relating to the condition of the equipment or its fitness for any particular purpose. It is further provided that in the event the equipment fails to operate as represented by the seller (Honeywell), Cowden is to make any claim on account thereof, solely against the seller and shall pay SEL (appellee) all rental due under the lease. In paragraph 10, Cowden further agreed that its obligations would continue regardless of any inability to use the equipment because of its failure to operate properly, or for any other cause. From this language, it is clear that there was an objective and readily ascertainable standard to determine when the Delivery and Acceptance Certificate (D & A) was due. It is equally clear that this standard did not permit Cowden to withhold the D & A simply because of dissatis-

faction with performance capabilities. Thus, when the system in question arrived on the premises and was placed in operating condition, it was incumbent upon Cowden to execute and return the D & A.

■ Here that simply was not done. Cowden's attorney admitted that the equipment was functioning without any defect. Cowden's only complaint was that the capacity of the computer was not as high as it had desired. Jack Hardy, the manager of data processing for Cowden, admitted that after the correction of a few initial start-up problems, not uncommon in any new installation, the machine did perform its computer functions. It appears to us that under these circumstances, Cowden had no option but to return the D & A.

■ The appellant urges upon this Court, as it did in the trial court, that it was necessary for the appellee to have executed the lease before there was a valid contract. However, we agree with the trial court that it is not always necessary for both parties to sign a contract, particularly where one has signed and both parties thereafter act as if they had a binding contract. The rule is stated in 17 Am.Jur.2d, *Contracts*, Sec. 70, p. 408. "In the absence of a statute requiring a signature or an agreement that the contract shall not be binding until it is signed, parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated." *See* also *Carter v. Hall*, 191 Ky. 75, 229 S.W. 132 (1921).

■ In this connection, the appellant claims that the Statute of Frauds, K.R.S. 371.010, was violated. However, under the statute, a contract or memorandum must be signed by the party to be charged. Interpreting that requirement, Kentucky has traditionally applied a special and minority rule to transactions for the sale or lease of real estate, requiring such contracts to be signed by the party by whom the lease or sale is to be made. 72 Am.Jur.2d, *Statute of Frauds*, Sec. 365, p. 889. Where land is not involved, the more general rule prevails which is that "the party to be charged" is

generally held to be the party who signed the agreement. It is no ground for objection that the agreement was not also signed by the party seeking to enforce the contract. 72 Am.Jur.2d, Sec. 366, p. 890. Therefore, the lease herein does not violate the Statute of Frauds.

■ Another argument that the appellant urges upon us to reverse this case was that the D & A was a condition precedent which never occurred and therefore there never was a contract. As previously discussed, there is no merit to this contention. We cannot accept that the D & A was an indicator that Cowden had to be completely satisfied with the performance of the equipment. The trial court considered this issue and concluded that Cowden's liability was in no way conditioned upon the return of the D & A and we think his position was amply supported by the evidence.

■ Before we leave this subject, we should point out that it has long been held that a party to a contract cannot take advantage of his own act or omission to escape liability. 17A C.J.S. *Contracts* § 468, pp. 640–641. Where a contract is to be performed on the occurrence of a future event, there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event; and if he is himself the cause of failure to perform the condition, he cannot rely upon the condition to defeat his liability. *Id.* at 645.

This Court has taken a similar position in the cases of *Odem Realty Co. v. Dyer*, 242 Ky. 58, 45 S.W.2d 838, 840 (1932), and *Bryant v. Jones*, 255 Ky. 606, 75 S.W.2d 34, 38 (1934).

■ Cowden argues that this lease was abandoned because of the negotiations between Cowden, the appellee, and Honeywell in regard to the purchase of the 2050A computer. The trial court found that there was no abandonment since SEL, the appellee, forbore to enforce the lease, pending the possibility of the substitution of a larger computer for the one actually leased. The trial court also found that the appellee did so in order to accommodate a good

customer and with the hopes of handling the transaction in regard to the larger computer, upon which it could make more money. The trial court found that this conduct was reasonable under the circumstances and did not constitute an abandonment by the appellee. We cannot say that this was clearly erroneous or not supported by sufficient evidence.

■ The trial court correctly ruled that there was no waiver or basis for estoppel in regard to the appellee's conduct. Indeed, the testimony of Mr. Kusch, and confirmed by Roger Nolan, appellant's attorney, indicated in unmistakable terms, that Cowden was not only advised of the appellee's continued reliance upon the original lease agreement, but that it was also instructed that the appellee would seek its legal remedy in the event the purchase of the larger computer was made as planned. This was entirely consistent with the appellee's previous conduct, since it had earlier refused to return the lease unsigned, as requested by Cowden, on the ground that it (appellee) had a binding agreement.

■ Finally, Cowden objects to the measure of damages. We have examined the evidence in regard to this and do not find that such evidence permitted the court to find damages based upon speculative testimony. The testimony indicated that the damages were reasonably ascertainable and that the cause of the damage was attributable to the breach of the contract by the appellant. *Kellerman v. Dedman*, Ky., 411 S.W.2d 315 (1967). *Roadway Express, Inc. v. Don Stohlman and Associates, Inc.*, Ky., 436 S.W.2d 63 (1969).

In summary, the trial court made a decision in this complex case, based upon conflicting evidence, and, under CR 52.01, we are not permitted to disturb the findings of fact unless they are clearly erroneous and not supported by the evidence. In this case, the trial court's findings are amply supported by the evidence and we find no error in the conclusions of law made by the trial court. Therefore, the judgment is affirmed.

All concur.