George F. SHADEH Plaintiff

v.

CIRCUIT CITY STORES,
INC. Defendant

No. CIV.A. 3:03CV–805–H.

United States District Court,
W.D. Kentucky,
At Louisville.

Sept. 9, 2004.

Ellen S. Bowles, Pollard & Bowles, PSC, Louisville, KY, for Plaintiff.

Kathryn A. Quesenberry, Woodward, Hobson & Fulton, Louisville, KY, Heather A. Mullen, Kaufman & Canoles, Norfolk, VA, for Defendant.

### MEMORANDUM OPINION

HEYBURN, Chief Judge.

Plaintiff, George Shadeh, is a former employee of Defendant, Circuit City Stores, Inc. ("Circuit City"). Plaintiff filed this case in federal court alleging federal statutory claims of racial discrimination, disparate treatment, wrongful discharge and retaliation. Shortly thereafter Circuit City moved to compel arbitration of the claims and to stay these federal proceedings. The Court has carefully considered the arguments of both sides and has concluded that the agreement to arbitrate is enforceable.

### I.

Plaintiff is a thirty-two year old male with a high school education. Plaintiff has some additional educational experience as well as certain business experience. He began his employment with Circuit City on July 31, 1996. Plaintiff held numerous positions at Circuit City including the position of store director. At the time Plaintiff entered into his employment with Circuit City, he was fully aware that the employment agreement contained a Dispute Resolution Agreement (the "DRA"). Plaintiff was given an opportunity to familiarize himself with the DRA and the rules under which disputes would be resolved. Moreover, he was given three days after beginning employment to withdraw his consent to the DRA. Consenting to the DRA was a mandatory requirement of Plaintiff's employment with Circuit City.

The arbitration rules and procedures are fairly straightforward. An employee may commence an arbitration by filing a request and the required filing fee of $75. The request must be filed within one year after the date that an employee knew of his claim. Such a provision is similar to the statute of limitations provision provided for under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* The DRA covers a variety of different disputes which may arise between the parties, including those which are the subject of this lawsuit. The DRA rules carefully delineate the procedures followed in any arbitration.

The rules provide that the parties shall participate equally in the selection of an arbitrator. The National Arbitration and Mediation Service provides a list of seven neutral arbitrators. The parties then have an opportunity to review the backgrounds

of the panel and indicate any of them which they find unacceptable. The arbitration service appoints an arbitrator from among those individuals found acceptable. The arbitration itself is held in a location near plaintiff's residence. Both parties may have representation of counsel. The procedures provide for discovery which is not unlike that available in federal court.

The rules allow taking testimony, transcribing testimony, and, if appropriate, the briefing of legal issues. They require that the arbitrator apply the relevant state or federal law to all claims. An employee may seek and the arbitrator may award all remedies which are applicable under the state and federal laws pertaining to the claim. During the arbitration, Circuit City is required to pay the arbitrator's daily or hourly fees as well as the other costs of arbitration. Those fees and costs could include the cost of the reporter who transcribes the proceedings, the cost of renting a room for the arbitration and certain other incidental costs such as photocopying and producing witnesses. Each party pays its own incidental costs. At the conclusion of the proceedings, the arbitrator may award costs against the losing party. Therefore, Plaintiff may be required to pay Circuit City's costs of arbitration and incidental expenses only *if* Circuit City prevails and *only* upon order of the arbitrator. The DRA provides, however, that Plaintiff's "liability for costs and fees of arbitration, other than attorney fees, however, shall be limited to the higher of $500 or three percent of the [Plaintiff's] most recent annual compensation at Circuit City."

The arbitrator may award attorney's fees in accordance with the applicable law. Although the arbitrator's award is final and binding on all parties, either party may appeal the arbitrator's decision in accordance with the appellate procedures of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"). The arbitration rules provide that Circuit City may alter or terminate the arbitration resolution rules and procedures on March 1 of any year upon giving thirty calendar days' notice to all affected parties.

## II.

■ The Supreme Court has held that agreements to arbitrate employment disputes as a condition of employment are generally enforceable under the FAA. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). The Sixth Circuit has consistently upheld the validity of pre-dispute mandatory arbitration agreements. *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir.2000); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 310 (6th Cir. 1991). Judicial protection of pre-dispute arbitral agreements extends to agreements to arbitrate statutory employment discrimination claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–27, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Willis*, 948 F.2d at 312.

■ Upholding any arbitration agreement is not automatic and should only be undertaken after careful consideration of the circumstances. As the Sixth Circuit stated, "[t]he Supreme Court has made clear that statutory rights, such as those created by Title VII, may be subject to mandatory arbitration only if the arbitral forum permits the effective vindication of those rights." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003) (citing *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647). Arbitration of statutory claims is thus deemed appropriate where "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer*,

500 U.S. at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)) (internal quotations omitted).

Plaintiff argues that the DRA is unconscionable and therefore unenforceable.

### A.

■ The Court must determine the enforceability of the arbitration agreement according to applicable state law. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943–44, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Plaintiff first asserts that the agreement is *procedurally* unconscionable because the parties have unequal bargaining power. Kentucky courts seem to reject the rule that a contract may be unconscionable simply because of uneven bargaining positions. In *Conseco Finance Servicing Corp. v. Wilder,* 47 S.W.3d 335 (Ky.App.2001), the Kentucky Court of Appeals upheld a mandatory arbitration agreement stating:

> A fundamental rule of contract law holds that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms. The doctrine of unconscionability has developed as a narrow exception to this fundamental rule. The doctrine is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain. *Id.* at 341.

Therefore, this Court will carefully scrutinize the contract to determine whether the terms of the agreement itself are substantively unconscionable or oppressive. The actual agreement, however, should not be deemed unenforceable solely due to a perceived uneven bargaining position.

■ Plaintiff also argues that the arbitration agreement is procedurally unconscionable because it lacks mutuality of obligation and consideration. This Court concludes that the Sixth Circuit's decision in *Morrison,* while construing Ohio law, governs this case. 317 F.3d at 658. Plaintiff had plenty of time to read and understand the obligations of the arbitration agreement and procedures. *Id.* at 668; *see Conseco,* 47 S.W.3d at 343. As in *Morrison,* the Court concludes that the arbitration agreement is supported by sufficient consideration and a mutuality of obligation. *Id.* at 667. Moreover, the ability of Circuit City to alter the program rules and procedures once a year on a designated date and with thirty days' notice to employees is neither unconscionable on its face nor unconscionable as applied based on the evidence here. *Id.* at 667–68.

### B.

■ The DRA itself does not appear to be *substantively* unconscionable. *See Conseco,* 47 S.W.3d at 343 (holding that substance of arbitration clause is not unconscionable because terms not unreasonable or oppressive); *see also Johnson v. Long John Silver's Restaurants, Inc.,* 320 F.Supp.2d 656, 665–66 (M.D.Tenn.2004) (stating that substantive unconscionability occurs when contract terms are unduly harsh or unfair). The procedure for selecting arbitrators is mutual and reasonable. While somewhat streamlined, the provisions for discovery, subpoenas and written interrogatories and discovery are similar to those available in a court of law. The DRA appears to provide adequate opportunity for Plaintiff to find support for his claim. The arbitrator is required to issue his opinion in writing and in a man-

ner consistent with applicable federal and state laws.

■ Additionally, the DRA does not limit or foreclose any of Plaintiff's remedies which might currently be available under state or federal law. The arbitrator may award any remedies available under state or federal law.[1] Consequently, the Court finds that Circuit City's arbitration provisions have the primary effect of changing only the form of decision and not the remedial and deterrent protections that the statutes in question afford. Thus, "[b]y agreeing to arbitrate a statutory claim, [Plaintiff] does not forego the substantive rights afforded by the statute; [he] only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S.Ct. 3346.

### III.

■ Plaintiff's strongest argument based on Sixth Circuit cases is that the fee and expense provisions, specifically the fee splitting provision, are substantively unconscionable. In *Morrison*, the Sixth Circuit struck down the former Circuit City cost-splitting provision in which each party paid one-half the cost of arbitration following the issuance of the arbitration award, unless the arbitrator decides to use his discretionary power to require the losing party to pay all the arbitration costs. 317 F.3d at 669. That agreement also provided that should an employee pay her share of the arbitration costs within 90 days, her costs are then limited to the greater of $500 or three percent of her most recent annual compensation. *Id.* Otherwise, the employee was required to pay her entire share of the costs. *Id.*

Statutory rights, such as those created by Title VII, are subject to mandatory arbitration only if the arbitral forum permits the effective vindication of their rights. *Id.* at 659. In this context, the court discussed the provision limiting an employee's exposure to costs, stating that:

> The provision reducing the (former) employee's exposure to the greater of $500 or three percent of her annual compensation presents a closer issue. However, a potential litigant considering arbitration would still have to arrange to pay three percent of her most recent salary ... within a three month period, or risking incurring her full half of the costs under the default rule. Faced with this choice ... it appears to us this substantial number of similarly situated persons would be deterred from seeking to vindicate their statutory rights under these circumstances.

*Id.* at 669–70.

The Sixth Circuit's cost-splitting analysis is not absolutely clear. On one hand, the court said that its modified case-by-case approach looks "to the possible 'chilling effect' of the cost-splitting provision on similarly situated potential litigants, as opposed to its effect merely on the actual plaintiff in any given case." *Id.* at 663. On the other hand, the court suggests that its analysis could reach different results: arbitration agreements being enforceable as to high-level management employees and unenforceable in "many, if not, most, [other] cases." *Id.* at 665. The inherent difficulty of such an analysis is compounded because Plaintiff has given the Court very little concrete evidence to meet his burden of showing that he and other similarly situated persons would be deterred by the prohibitive expense of arbitration. *Id.* at 659 (citing *Burden v. Check Into*

---

1. This provision marks a significant change from the old Circuit City agreement that limited a claimant's remedies to such an extent that the Sixth Circuit found the underlying remedial and deterrent principles of Title VII to be significantly undermined. *Id.* at 672.

*Cash of Ky., LLC,* 267 F.3d 483, 492 (6th Cir.2001)).

The Sixth Circuit indicated that that the former cost-splitting rule presented a close question. *Id.* at 669. Since that ruling, Circuit City has modified its cost-splitting provision by deleting those provisions that the Sixth Circuit found particularly troubling. First, the DRA no longer requires a substantial up-front payment within three months that is likely to deter a potential claimant. Thus, in order to initiate a claim, one need not risk their "scarce resources in the hopes of an uncertain benefit." *Id.* at 670. A second important change is that a claimant is not automatically obligated to pay a share of the arbitration costs. The DRA now *only* requires that the claimant pay additional costs at the conclusion of the proceedings when so ordered by the arbitrator. Finally, under the new rule, there is no circumstance under which a claimant's failure to pay the arbitration costs initially will result in he or she having to ultimately pay a greater share of those costs. A claimant's fee exposure is limited to the greater of $500 or three percent of his most recent salary.

These cost limitations and procedural changes are significant protections that address the Sixth Circuit's concerns expressed in *Morrison.* No costs are imposed automatically; only through order of the arbitrator; and overall liability is limited. Suppose the average employee makes $25,000 annually, the maximum liability for costs would equal $750. The normal costs in civil litigation, including deposition originals can easily exceed this amount. Plaintiff's theoretical exposure to costs under the DRA is no greater than, and perhaps less than, potential civil litigation costs in the event of an unsuccessful result. Consequently, the Court does not conclude that the DRA's cost-splitting provisions would deter potential claimants from pursuing their statutory rights any more than

they would be deterred by the prospect of litigation in federal court. *Id.* at 659–61 (discussing *Bradford v. Rockwell Semiconductor Sys., Inc.,* 238 F.3d 549, 556 (4th Cir.2001)).

### IV.

■ The Court's greatest general concern with such agreements in these circumstances is that (1) the agreement to arbitrate is ultimately a compulsory and non-negotiable one in which the employee has no realistic choice and that (2) the arbitrators may not have the appearance of fairness and impartiality.

In *Morrison,* the Sixth Circuit noted that plaintiff was "a highly educated managerial employee who was capable of understanding the terms of the agreement." *Id.* at 668. However, the Circuit does not seem to be suggesting that less well-educated employees could void an arbitration agreement. The reality is that most applicants for employment, whether well-educated or not, will not reject an employment offer due to a concern about having to arbitrate a dispute which has not arisen. Nevertheless, the Court lacks evidence that Plaintiff's agreement was not voluntary.

Defendants have designed the arbitration system and have designated the administrators of it. Under the circumstances of "captive" arbitration system, one cannot ignore the possibility that arbitrators could be partial to those who retain the power to effect their continued employment. These circumstances might give a claimant, despite the all the outward procedural protections, some concern about fairness.

Nevertheless, higher courts have concluded that such agreements are generally permissible in these circumstances. Arbitration holds potential benefits for all sides. Moreover, the Court has no evi-

dence that the arbitrators here are likely to be partial to Circuit City. District courts retain a limited but still important role policing the arbitration procedures and their results to protect all sides. *See* 9 U.S.C. § 10; *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 135–36 (6th Cir.1996); *Shelby County Health Care Corp. v. A.F.S.C.M.E., Local 1733*, 967 F.2d 1091, 1094–95 (6th Cir.1992).

The appropriate remedy under this circumstance is a stay of the pending action. 9 U.S.C. § 3. The Court will enter an order consistent with this Memorandum Opinion.

### ORDER

Circuit City Stores, Inc., has moved to compel arbitration and stay or dismiss these proceedings. After carefully considering the arguments and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motion of Circuit City Stores to compel arbitration is SUSTAINED.

IT IS FURTHER ORDERED that Plaintiff's complaint is STAYED and REMOVED from the Court's active docket pending further motion by a party.