**ENERGY HOME, DIVISION OF SOUTHERN ENERGY HOMES, INC., Appellant**

v.

**Brian PEAY and Lori Peay, Appellees.**

**No. 2011–SC–000462–DG.**

Supreme Court of Kentucky.

Aug. 29, 2013.

Larry Colby Deener, Elizabeth Anna Deener, for Appellant.

Zack N. Womack, for Appellees.

Opinion of the Court by Justice VENTERS.

Appellant Energy Homes, Division of Southern Energy Homes, Inc. (SEHI), ap-

peals from an opinion of the Court of Appeals affirming the Daviess Circuit Court's denial of a motion to compel arbitration. For the reasons stated herein, we reverse and remand this matter to the Daviess Circuit Court for entry of an order consistent with this decision.

## I. FACTUAL AND PROCEDURAL HISTORY

In November 2005, Brian Peay and his wife, Lori, decided to purchase a manufactured home from American Dream Housing Inc. (American Dream). American Dream is a retail dealer of manufactured homes located in Owensboro, Kentucky. The home selected by the Peays was manufactured by SEHI. Although the written purchase contract identified the buyers as "Brian & Lori Peay," the contract was signed only by Brian Peay and an agent of American Dream. SEHI was not a party to the agreement and Lori Peay did not sign it. The purchase contract contained a merger and integration clause that said: "This agreement contains the entire understanding between dealer and buyer and no other representation or inducement, verbal or written, has been made which is not contained in this contract." No express warranties were provided by the purchase contract.

Several weeks later, the home was delivered to American Dream directly from SEHI's factory in Alabama. American Dream then delivered it to the Peays' home site. There, it was set in place on a basement foundation constructed by independent contractors who are not parties to this action.

On June 26, 2006, the parties met for a closing to complete the transfer of ownership of the home to the Peays. At the closing, SEHI offered the Peays certain written warranties on the home in exchange for the Peays' agreement that any disputes over the home would be submitted to binding arbitration. Brian Peay accepted the warranties and signed the "Binding Arbitration Agreement and Jury Waiver" (Arbitration Agreement), which was also signed by a representative of American Dream and a representative of SEHI. Additionally, Mr. Peay watched a video, entitled "Closing Video," which included guidelines for selecting a site for the house, an explanation of the delivery and installation process, and an explanation of the Arbitration Agreement. He signed a transcript of the Closing Video and the "Original Home Owner Registration Card," which was then stamped "Warranty Card."

The Arbitration Agreement provides:

You and We agree to arbitrate any and all claims and disputes arising from or relating to the Contract, the Manufactured Home, the sale of the Manufactured Home, the design and construction of the Manufactured Home, the financing of the Manufactured Home, and any other disputes between You and Us, including any disputes regarding the enforceability, interpretation, breadth, scope, meaning of this Agreement. The arbitration will be binding. You and We further agree to waive any right to trial by jury in any civil action arising from or relating to the Contract, the Manufactured Home, the sale of the Manufactured Home, the design and construction of the Manufactured Home, the financing of the Manufactured Home and any other disputes between You and Us.

*DEFINITIONS*

. . .

"You" shall mean the buyer or buyers named on the Contract and any occupants of the Manufactured Home. If there is more than one buyer named on the Contract or more than one occupant of the Manufactured Home, "You" shall

refer not only to each buyer or occupant individually, but also all such buyers or occupants together.

"We" shall mean Southern Energy Homes, Inc., and the Dealer, and the agents and employees of either of them....

"Contract" shall mean the contract executed between You and the Dealer for the purchase of the Manufactured Home....

*TERMS*

Note this Agreement provides for mandatory and binding arbitration. This means that You and We must arbitrate claims and disputes covered by this Agreement.

. . .

***Construction Of This Agreement***

You and We will abide by this Agreement to arbitrate, regardless of any term to the contrary in any other writing, unless such other writing specifically refers to this Agreement....

In the event that You or We disagree regarding the interpretation of this Agreement, this Agreement shall be construed to effectuate arbitration, rather than to defeat it. If any portion of this Agreement is held to be void or unenforceable, then that portion or portions of the Agreement shall be severed from the remainder of this Agreement, which shall remain enforceable.

. . .

***IMPORTANT—JURY WAIVER***

*You and We hereby irrevocably waive our right to trial by jury on any claims that You now have or may hereafter acquire against Us or that We now have or may hereafter acquire against You....*

In the weeks after the closing, the Peays began to discover flaws in the home. Lori Peay requested and received warranty service from SEHI and she signed acknowledgments for repair services provided by SEHI on November 6, 2006 and November 22, 2006. However, the Peays' dissatisfaction with the home persisted and in 2008 they filed suit in the Daviess Circuit Court, naming SEHI as one of the defendants. Their complaint described a litany of defects in the home, including issues with the construction of the foundation and basement. SEHI moved the circuit court to enforce the Arbitration Agreement by ordering the parties to arbitrate the dispute. The court denied the motion.

SEHI appealed the circuit court's order. The Court of Appeals concluded that: 1) the Arbitration Agreement violated the merger and integration provision of the purchase contract; 2) the Arbitration Agreement was not enforceable because it was unconscionable; and 3) Lori Peay did not sign the Arbitration Agreement and cannot be bound by its waiver of the right to litigate in court.

 In reviewing an order denying enforcement of an arbitration agreement, the trial court's legal conclusions are reviewed *de novo* "to determine if the law was properly applied to the facts[;]" however, factual findings of the trial court "are reviewed under the clearly erroneous standard and are deemed conclusive if they are supported by substantial evidence." *Padgett v. Steinbrecher,* 355 S.W.3d 457, 459 (Ky. App.2011). Since the facts are not disputed, we will review the court's conclusions of law *de novo*.

## II. THE ARBITRATION AGREEMENT WAS NOT PROHIBITED BY THE MERGER AND INTEGRATION CLAUSE OF THE PURCHASE CONTRACT

The trial court denied SEHI's motion to compel arbitration on the grounds that the

Arbitration Agreement was in violation of the merger and integration clause of the purchase contract between the Peays and American Dream. In affirming that decision, the Court of Appeals reasoned, since the November 2005 purchase contract contained no provision for arbitration, the June 2006 agreement requiring arbitration was expressly prohibited. For the reasons explained below, we disagree.

 The Peays argue that a merger and integration clause prevents the parties from making subsequent modifications of the original contract or from entering into new contracts that are inconsistent with the original agreement. That assertion is not correct. "In general, a 'merger clause' is a contractual provision to the effect that the written terms of the contract may not be varied by *prior agreements* because all such agreements have been merged into the written document." 17A C.J.S. *Contracts* § 577 (2013) (emphasis added). The merger and integration clause of the November 2005 contract executed by Brian Peay and American Dream simply meant that the parties were not contractually bound to any *prior* expressions or representations or understandings that may have arisen between them. The clause operates to prevent a party from disavowing the written contract by claiming that the true agreement between the parties included other, unwritten terms or conditions.

 A merger and integration clause does not prohibit the parties from future agreements to modify or even to rescind the contract. "The power to modify or rescind a preexisting agreement is coextensive with the power to initiate it; either is an incident of contractual capacity. This rule prevails, though the contract recites that no modification shall be made except in writing." *Vinaird v. Bodkin's Adm'x,* 254 Ky. 841, 72 S.W.2d 707, 711 (1934)

(citations omitted). We have long recognized

that parties who have the right to make a contract have the power to unmake or modify, regardless of self-imposed limitations; that by subsequent agreement based upon a sufficient consideration parties may modify their contract in any manner they choose; and that generally a new consideration is required in order for an attempted modification for a contract to be valid.

*Id.* (citing *Elliot on Contracts,* §§ 1987, 1989).

 We further note that the merger and integration clause provided that the purchase contract was the complete agreement *"between dealer and buyer."* The dealer was the retailer, American Dream. SEHI was the manufacturer of the home and it was not bound by the terms of the purchase contract.

 The Arbitration Agreement is a valid and complete contract, independent of the purchase contract. The fundamental elements of a valid contract are "offer and acceptance, full and complete terms, and consideration." *Commonwealth v. Morseman,* 379 S.W.3d 144, 149 (Ky.2012) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 384 (Ky.App. 2002)). For the terms to be considered complete they must be "definite and certain" and must set forth the "promises of performance to be rendered by each party." *Kovacs v. Freeman,* 957 S.W.2d 251, 254 (Ky.1997).

SEHI offered the Peays certain express warranties in exchange for their agreement to submit future disputes about the home to arbitration, instead of litigating disputes in the courts. SEHI was not compelled to provide the express warranties. The warranties were not conditions of the Peays' agreement to purchase the

home. They were free to reject SEHI's express warranties and rely exclusively upon the implied warranties provided by Kentucky law. Mr. Peay reviewed the Arbitration Agreement and the informational video, and he agreed to its terms.

■ The Arbitration Agreement was supported by adequate consideration. Mutual promises constitute adequate consideration *if* a benefit is conferred to the promisor or a detriment is incurred by the promisee. *More v. Carnes*, 309 Ky. 41, 214 S.W.2d 984, 991 (1948). The manufacturer's promise to cure certain flaws and defects that appear within a given time was fair consideration for the buyers' mutual promise to submit disputes to arbitration. Furthermore, "an arbitration clause requiring both parties to submit equally to arbitration constitutes adequate consideration." *Kruse v. AFLAC Intern., Inc.*, 458 F.Supp.2d 375, 385 (E.D.Ky.2006) (citing *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 380 (6th Cir.2005)); *see also Shadeh v. Circuit City Stores, Inc.*, 334 F.Supp.2d 938, 941 (W.D.Ky.2004). The Arbitration Agreement was a valid contract, independent of the purchase contract, and not rendered unenforceable by the merger and integration clause of the purchase contract.

### III. THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE

■ We further disagree with the Court of Appeals' conclusion that the Arbitration Agreement was unconscionable. Under both the Federal Arbitration Act and the Kentucky Uniform Arbitration Act, agreements to submit controversies to arbitration may be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; KRS 417.050. Certainly, unconscionability is one of the grounds upon which any contract may be revoked. *AT & T Mobility LLC v. Concepcion*, —— U.S. ——, 131 S.Ct. 1740, 1747, 179 L.Ed.2d 742 (2011); *Schnuerle v. Insight Commc'ns, Co.*, 376 S.W.3d 561, 575 (Ky. 2011); *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky.App.2001).

■ "The doctrine [of unconscionability] is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Schnuerle*, 376 S.W.3d at 575. Unconscionability may be procedural or substantive.

■ Procedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement. *Id.* at 576–77. It includes, for example, the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual term. *Id.* Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. *Id.* at 577. When reviewing for substantive unconscionability, consideration is given to "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.* (citations omitted).

■ Appellees argue that the Arbitration Agreement is procedurally unconscionable because no person of reasonable intelligence would expect that the manufacturer of a modular home would interject a requirement for arbitration upon transfer of title eight months after the purchase contract was executed. However, we see

no procedural unconscionability in the arbitration provisions that accompanied the express warranty contract. The arbitration requirements are stated in clear and concise language; it is not hidden or obscured. The agreement clearly explains that arbitration means giving up the right to resolve disputes through a jury trial. The language used in the arbitration clauses was understandable by an adult of ordinary experience and intelligence. Mr. Peay had not only the opportunity to read the agreement, but he also watched a video which explained it.

The fact that the express warranties from SEHI and the Arbitration Agreement did not arise until the home was delivered and the title was transferred did not create procedural unconscionability. The Arbitration Agreement did not rescind or revoke any provisions of the original purchase contract and the Peays could have completed the purchase of the home without submitting to the Arbitration Agreement. They could have relied exclusively upon the implied warranties provided by Kentucky law. Instead, Mr. Peay opted to accept SEHI's express warranties and the Arbitration Agreement that went with it. It was a contract of adhesion only in the sense that he was not given the opportunity to negotiate for the parts of the warranty agreement he liked and to bargain away the parts he disliked; it was presented as a "take it or leave it" option. The lack of that option did not make its acceptance compulsory. Contracts of adhesion are not *per se* unconscionable. *Schnuerle*, 376 S.W.3d at 576.

We are also unable to find substantive unconscionability in the Arbitration Agreement. The obligation to arbitrate and the waiver of jury trial rights were mutually binding on all parties. SEHI is subject to the same limitation of its right to litigate in court as Appellees.

"An unconscionable contract has been characterized as 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.' Unconscionability determinations being inherently fact-sensitive, courts must address such claims on a case-by-case basis." *Conseco*, 47 S.W.3d at 342 (citations omitted). Homes are complex products, whether built on site or manufactured at a factory. Litigation over defects and flaws in residential construction is often complicated, expensive, and time-consuming. It is not difficult to believe that reasonably intelligent people would be willing to agree to arbitrate such disputes, especially in exchange for express warranties. There is nothing commercially unreasonable about the Arbitration Agreement presented in this case. Accordingly, we find no grounds upon which to conclude that it is unconscionable.

The Court of Appeals based its finding of unconscionability upon the misperception that the Peays could complete the closing and take title to the home they had paid for *only* by accepting the Arbitration Agreement. That is not the case presented to this Court and the trial court made no such finding. The Arbitration Agreement was not presented as a requirement for completion of the home purchase but was an option that provided the buyers express warranties from the manufacturer provided they agreed to arbitrate any dispute. The Arbitration Agreement was a valid contract under the provisions of the Kentucky Uniform Arbitration Act and the Federal Arbitration Act.

## IV. LORI PEAY IS ALSO BOUND TO THE ARBITRATION AGREEMENT

The Court of Appeals concluded that Lori Peay could not be bound by the Arbi-

tration Agreement because she did not express her assent to the agreement by signing it. SEHI argues that the Arbitration Agreement should be enforced because Lori, as well as Brian, was in privity of contract with SEHI.

■ The absence of Lori's signature on the agreement to arbitrate did not foreclose the possibility that she had otherwise bound herself to that contract. "[I]t is not always necessary for both parties to sign a contract, particularly where one has signed and both parties thereafter act as if they had a binding contract." *Cowden Mfg. Co., Inc. v. Sys. Equip. Lessors, Inc.,* 608 S.W.2d 58, 61 (Ky.App. 1980). The general rule is: "In the absence of a statute requiring a signature or an agreement that the contract shall not be binding until it is signed, parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated." *Id.* (citation omitted).

■ On its face, the Arbitration Agreement that accompanied the warranty provisions applies to "the buyer or buyers named on the [purchase] Contract and any occupants of the Manufactured Home." The purchase contract identified the buyers as "Brian & Lori Peay." Appellees do not argue that Lori Peay is not a party to the purchase contract, even though she did not sign it. By joining Brian Peay as a plaintiff in this action against SEHI, Lori asserted an ownership interest in the home. Whether Brian acted as her agent in signing the Arbitration Agreement on her behalf as well as his own is a question that has not been addressed. Nevertheless, Lori's requests for warranty services from SEHI, and her signed acknowledgments that the repairs were performed to her satisfaction, indicate that she accepted the express warranties that SEHI offered in exchange for the Arbitration Agreement.

■ "[I]t is an established principle of law that where one with knowledge of material facts accepts or retains the benefits of the efforts or acts of another acting for him, he is deemed to have ratified the methods employed for he may not, though innocent himself, receive the benefits and at the same time disclaim responsibility for the measures by which they were acquired." *Stewart v. Mitchell's Adm'x,* 301 Ky. 123, 190 S.W.2d 660, 662 (1945); *see also Cox v. Venters,* 887 S.W.2d 563 (Ky. App.1994). Upon these principles, we conclude that by her actions in accepting the warranty services expressly agreed to by Brian, Lori Peay assented to the Arbitration Agreement and bound herself to its terms and conditions.

## V. CONCLUSION

For the reasons stated above, we conclude that the Daviess Circuit Court erred in denying SEHI's motion to compel arbitration. Accordingly, we reverse the opinion of the Court of Appeals and remand this matter to the Daviess Circuit Court for further proceedings consistent with this opinion.

All sitting. All concur.