RENDERED:  MAY 31, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1182-MR

WILLIAM FREDRICK BUELL, JR.                    APPELLANT


v.          APPEAL FROM MADISON FAMILY COURT
            HONORABLE NORA J. SHEPHERD, JUDGE
            ACTION NO. 19-CI-50469


BILLIE JAN ROUSE BUELL                          APPELLEE



OPINION AND ORDER
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND LAMBERT, JUDGES.

EASTON, JUDGE:  In this marriage dissolution action, Appellant ("William")

asks us to reverse the Madison Family Court's denial of his demand to hold

Appellee ("Billie") in contempt for alleged violations of the parties' initial status

quo obligations and a later specific spending limit from a joint account.  Having

fully reviewed the record and the applicable law, we find no abuse of discretion.

We affirm the Madison Family Court.

# FACTUAL AND PROCEDURAL HISTORY

The parties were married in Illinois in 1976. They separated twice previously but reconciled. The final separation occurred in August 2019. Billie filed the dissolution action shortly thereafter.

Billie is a retired teacher. She receives two retirement checks per month, one from Illinois and one from Kentucky. She also receives a small social security payment. After retirement, Billie occasionally worked as a substitute teacher and received some income from this work. William is also retired, and his sole income source is social security. At the time of the separation, Billie received approximately four times the retirement income that William received. When Billie filed for dissolution, she vacated the marital residence where the parties had lived for most of the marriage. William remained in the home, which included a 20-acre farm where the parties kept several horses.

In November 2019, William filed a motion for a status quo order and a motion for non-dissipation of assets. A docket sheet was entered on November 18, 2019, on which was written "Non-diss. order to enter." No additional orders or details ever followed.

Nothing happened in this case for two years, and the final hearing was not conducted until September of 2022. Although the parties were instructed to file proposed findings for the final post-hearing order, they did not. By the time an

order was entered and a motion to reconsider that order was denied, this case had lasted for four years. It seems William benefited from living in the house for those years without any compensation to Billie for her interest in the marital home. William was also benefiting from Billie's Kentucky retirement income.

Throughout the proceedings, the circuit court regularly stated that the action was taking much longer than necessary, as the only issues to be determined were those about property. The case was described as being "long in the tooth." The family court rightly observed that the case was being "slow walked."

The parties participated in two mediations, which were completely unsuccessful. Billie accused William of not negotiating in good faith. There were many disagreements between the parties which led them to file several motions before the family court, including William's attempts to have Billie held in contempt.

One such motion was addressed in November 2021, when Billie asked the court to order an appraisal of the marital residence. William then asked the family court to prohibit Billie from withdrawing funds from the parties' joint account without notice to him. He claimed he was unable to maintain the expenses for the farm. At this time, both William's social security check and Billie's Kentucky retirement check were being deposited into the joint account. Billie's Illinois retirement check went into her personal account. On the docket sheet for

this hearing, the family court wrote that Billie would only withdraw $250 per month from the joint account. The hearing for this date was not included for our review, and no subsequent order with more details was ever entered.

In March 2022, Billie asked the family court to sell the marital home. She stated she was unable to meet her current needs with only the income to which she was allowed access and that selling the home would give both parties additional funds for living expenses. Additionally, Billie asked the family court to allow her to deposit her Kentucky teacher retirement check into her personal account rather than the joint account. William objected to both requests.

At a case management conference in April 2022, the court denied Billie's motion to sell the home at that stage of the proceedings if the parties did not agree to do so. The court indicated this case should be completed all at once, rather than piecemeal.

As to the joint account, the family court said there was no order in place that required the parties to put the entirety of their income into a joint account. Notably, William's attorney did not respond to this assertion. The family court seemed perplexed that the parties still maintained a joint account after being separated for three years. Again, no additional order was tendered or entered that explained the court's rulings further. The only order entered immediately after this

case management conference was the court's Order Scheduling Trial Date. The overdue final hearing would take place in September of 2022.

Before the final hearing, William filed a Motion for Show Cause. In this motion, William alleged Billie had violated a status quo order by removing all of her retirement funds from the parties' joint account and by unilaterally closing a jointly held credit card, which damaged William's credit score. Because a final hearing was already scheduled, the family court passed this motion to be heard at the final hearing. The court stated again that there was no order in the record that outlined what exactly the "status quo" was for these parties or what would constitute dissipation of assets. The court also repeated its frustration that the case was not proceeding at an appropriate pace. It appeared to the court that one party did not seem to want to resolve the case, as the "status quo" was too comfortable.

On September 22, 2022, the final hearing finally took place. Other than the parties, the only witness was the real estate appraiser who testified as to the valuation of the marital property. Billie agreed with the appraisal of the property. William disputed it, but he did not present a different appraisal or any other expert testimony or evidence.

Billie testified she retired in 2016, and that was when she began receiving both retirement checks. She stated she always put the smaller Illinois retirement check into a personal account, while she put the Kentucky retirement

funds into the joint account. She did move her Kentucky retirement into her personal account once she was told by the court that she was permitted to do so, although she didn't remember exactly when that began.

As for the closing of the joint credit card, Billie acknowledged that she closed this account without consulting or advising William. She testified she rarely used this card, and the card in her possession had expired. When she attempted to get a new one, the company would not send her a new card to her current address. They would only send a new card to the address that was on file with them, which was the marital address where William lived.

Billie was still able to access the account electronically, and she noticed the balance on the card continued to increase. She stated both she and William were making payments on the card, with her making payments from her personal account, while William made payments from the joint account. At that point, most of Billie's retirement income was still being deposited into the joint account, which benefited William. Billie stated she spoke with the company in an attempt to get only her name removed from the account, but it was not possible. So, she decided to close the account, which she was permitted to do.

William testified he believes Billie has been dissipating assets over the course of their separation, as well as before their separation. He attempted to bring in evidence of Billie's "frivolous spending" as far back as 2014. The family

court did not allow this testimony, as it was not relevant to the issues for the current dissolution.

William testified his credit rating dropped from "excellent" to "fair" after Billie closed the joint credit card account. He stated he used the card to pay the property taxes on the marital property. He was making payments on the account. William also testified he had issues maintaining the home after Billie moved her retirement funds from the joint account. He stated he did not know she was going to do that ahead of time, and he believes by doing so, she violated the court's status quo order.

At the conclusion of the hearing, the family court determined that because the parties could not agree about basically anything, it saw no way around ordering the sale of the property and dividing the proceeds. The court also declined to find Billie in contempt for moving her retirement funds or closing the joint credit card account. The court stated that after this long period of separation, the parties should not have still been using any joint accounts at all. Any joint account was going to be closed eventually with whatever credit rating reduction that would normally flow from that closing.

With no help from the parties in the form of suggested findings, the court issued its Findings of Fact, Conclusions of Law, and Decree of Dissolution almost a year later on August 2, 2023. Despite the considerable issues of

allocation of and division of property decided by the family court, William now only appeals the portion of the decree which declined to sanction Billie for her alleged contemptuous actions. William hired a different attorney from his family court counsel to prosecute this appeal.

## STANDARD OF REVIEW

Abuse of discretion is the appropriate standard of review for decisions regarding contempt. *Meyers v. Petrie*, 233 S.W.3d 212, 215 (Ky. App. 2007). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* The clear error standard applies to the findings of fact by the family court. *Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011).

## ANALYSIS

As a preliminary matter, William has filed a Motion to Strike Billie's Brief for failure to comply with Kentucky Rules of Appellate Procedure ("RAP") 32(B)(3) and 32(B)(4). These rules require ample citations to the record in both the statement of the case and the argument sections of a brief. "When an appellate advocate fails to abide by the appellate briefing rules, this Court has the option to: (1) ignore the deficiency and proceed with the review; (2) strike the brief or its offending portions, or (3) to review the issues raised in the brief for manifest injustice only, if the briefing deficiency pertains to the appellant's statement of

preservation of error." *Swan v. Gatewood*, 678 S.W.3d 463, 469 (Ky. App. 2023) (citations omitted). However, "how to proceed in imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007).

Billie did cite to the record even if not as amply as William thinks she should have. She also cited authorities, basically agreeing with much of the law cited by William. In any event, the record in this matter is not particularly voluminous, and any technical violation of the briefing rules does not significantly interfere with our review. We decline to impose any sanctions, and we deny William's motion to strike.

William argues the family court erred by failing to enforce the parties' agreed status quo order. But there is no order, only a notation on a docket sheet with no explanation. A family court may use a docket sheet to record its order so long as the sheet does not have more than one case addressed on it. CR[1] 58(1). The use of signed docket sheets for entry of multiple decisions applies only to the district courts. CR 58(2).

Overlooked in this case is that the family court did not intend for the docket sheet to be its order for status quo. The family court expected the tender of

---

[1] Kentucky Rules of Civil Procedure.

an order specific to these parties. As would be seen throughout this case, the parties did not follow through.

Regardless of the absence of a specific court order, William claims Billie violated her status quo obligation in two ways; first, by diverting all her retirement funds into her own personal account. Second, he believes it was a violation to close the joint credit card account, which allegedly damaged his credit score. The family court elected not to sanction Billie for any violations, as it determined "the 'status quo' order generally lacked sufficient specificity for enforcement purposes."[2]

This leaves only the petty argument about the $250 limitation placed on Billie in a later docket sheet order. As Billie explained, she had a good reason for the fairly minimal draws from the account in excess of this monthly allowance. When she finally got her two horses from William, what little horse tack William gave her was in poor condition, and she had to spend some money just to basically equip the horses.

"Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996). "Civil contempt consists of the failure of one to do something under order of court, generally for the benefit of a party litigant." *Id.*

_____

[2] Findings of Fact, Conclusions of Law, and Decree of Dissolution, page 3, Record at 271.

-10-

"In a civil contempt proceeding, the initial burden is on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order." *Commonwealth, Cabinet for Health & Fam. Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011). Once a prima facie case is made, "a presumption of contempt arises, and the burden of production shifts to the alleged contemnor to show, clearly and convincingly, that he or she was unable to comply with the court's order or was, for some other reason, justified in not complying." *Id.* "The alleged contemnor must offer evidence tending to show clearly that he or she made all reasonable efforts to comply. If the alleged contemnor makes a sufficient showing, then the presumption of contempt dissolves and the trial court must make its determination from the totality of the evidence, with the ultimate burden of persuasion on the movant." *Id.* (citations omitted).

Before contempt can be found, the first requirement is a valid court order. William paints this non-existent status quo order as an "agreed order." An agreed order, if properly entered, is a contract. *Cagata v. Cagata*, 475 S.W.3d 49, 56 (Ky. App. 2015). "The fundamental elements of a valid contract are offer and acceptance, full and complete terms, and consideration. For the terms to be considered complete they must be definite and certain and must set forth the promises of performance to be rendered by each party." *Waggoner v. Waggoner*,

644 S.W.3d 548, 552 (Ky. App. 2022) (citing *Energy Home, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013)).

None of those elements are present here. It cannot be reasonably argued that the singular phrase "Non-diss order to enter" contains "full and complete terms." In order to determine if a party has violated a valid court order, the substance of the order must be ascertainable by its written terms. The status quo "order" William claims Billie violated is a docket sheet from November 2019. The notation indicates the family court intended the parties to submit a more detailed order. This was not done. William cannot show Billie violated a valid court order, because no valid status quo order ever existed. We agree with the family court that the "order" William attempted to enforce was not specific enough to be enforceable.

Prior to redirecting her Kentucky retirement funds[3] away from the joint checking account, Billie specifically asked the family court for permission to do so. The court responded that no order existed that would prohibit Billie from taking this action. For William to argue that Billie violated a court order under these circumstances is disingenuous at best, bordering on frivolous. Additionally,

---

[3] We note the protection provided to Billie to treat her Kentucky retirement as her property by Kentucky Revised Statutes ("KRS") 161.700. The existence of other accounts for William or Billie impacted this protection. KRS 403.190. Again, William does not question the overall division of the substantial property these parties had at the time of the divorce, just the non-finding of contempt.

William requested sanctions against Billie in the amount of $48,000 with absolutely no explanation whatsoever as to a valid basis for this number. If a party is seeking compensation from an alleged contempt, said party must prove that amount. *Ivy*, *supra*, at 332.

If William could overcome the problems with the lack of a specific court order, he cannot show the family court's refusal to find contempt was erroneous. Despite William's assertions to the contrary, the choice to decline to sanction a party for contempt is within the family court's discretion. "A court has broad discretion when exercising its contempt power. A court's discretion in this regard necessarily encompasses the discretion to determine when to apply its contempt powers and when to refrain from imposing sanctions and fines. Absent an abuse of the court's discretion we will not disturb its decision on appeal." *Cary v. Pulaski Cnty. Fiscal Ct.*, 420 S.W.3d 500, 520 (Ky. App. 2013) (citations omitted). Considering the slow walking engaged in by William in this case, the family court was justified in evaluating the equities and declining to hold Billie in contempt.

## CONCLUSION

To the extent a valid "status quo" order existed, it was without any specifics. With the long history of this case, the family court was not required to agree with William's punitive motivation in seeking contempt sanctions. With

-13-

what little evidence was presented about excess draws from the joint account by Billie, the family court was within its rights to accept the explanation offered and not find contempt.

Contempt is for the court to decide; it is not a weapon to be used by the parties. If any punishment is deserved in this case, it may well be that Billie's request that we consider this appeal frivolous is the better candidate to serve as a basis for such action. But we decline that invitation so that these parties may finally move on from their divorce. We affirm the Madison Family Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

William D. Tingley
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel L. Gaus
Rodney G. Davis
Richmond, Kentucky